**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PATRICIA A. PEREZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DXC TECHNOLOGY SERVICES LLC, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-06066-BLF<br><br>**ORDER GRANTING IN PART WITHOUT LEAVE TO AMEND AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Re: ECF 65] |

Plaintiff Patricia A. Perez brings this putative class action against DXC Technology Services LLC ("DXC"), Hewlett Packard Enterprise Company ("HPEC"), HP Enterprise Services, LLC ("HPES"), and Enterprise Services, LLC ("ES") (together, "Defendants") alleging Defendants failed to pay Plaintiff and putative class members for all hours worked in violation of the Fair Labor Standards Act ("FLSA") and for violations of various California wage and hour laws. *See* Third Amended Complaint ("TAC"), ECF 64. Before the Court is Defendants' motion to dismiss (1) all of Plaintiff's claims against Defendants DXC and HPEC and (2) Plaintiff's ninth cause of action for civil penalties pursuant to the Private Attorneys General Act ("PAGA") against all Defendants. Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint ("Motion"), ECF 65.

The Court heard oral arguments on August 27, 2020 (the "Hearing"). For the reasons discussed below, the Court GRANTS IN PART WITHOUT LEAVE TO AMEND AND DENIES IN PART Defendants' Motion.

**I.　BACKGROUND**

Plaintiff alleges that on or about June 23, 2003, she was hired by "Defendants' predecessors" as "an hourly, non-exempt employee who worked in California." TAC ¶ 22. Plaintiff claims that she and the putative class members "were misclassified as exempt employees when in fact they were

non-exempt employees." *Id.* ¶ 27. Plaintiff's job duties included "reviewing a customer's scope of work, determining products and services that will meet the scope of work needed by the customer, and pricing the entire purchase." *Id.* According to Plaintiff, she and the putative class members regularly worked more than eight hours each workday and more than forty hours per week, but they did not receive overtime compensation. *Id.* ¶ 28. Plaintiff further alleges that she and the putative class were not provided with meal or rest periods and that they were required to work through these periods to complete work on time. *Id.* ¶¶ 31-34. Plaintiff also claims that Defendants "maintained policies that provide for the unlawful forfeiture of vested vacation pay." *Id.* ¶ 38. Plaintiff further claims that she and the putative class members "were not provided with accurate wage statements." *Id.* ¶¶ 40-45.

On October 10, 2017, Plaintiff filed this suit in Santa Clara Superior Court. Not. of Removal, ECF 1. On October 23, 2017, Defendants removed the action on federal question grounds citing the Federal Fair Labor Standards Act claim. *Id.* On December 15, 2017, Plaintiff filed a first amended complaint, adding a cause of action for civil penalties pursuant to the PAGA (Cal. Lab. Code §§ 2698, *et seq.*). ECF 18. On January 26, 2018, Defendants filed a motion to dismiss on the ground that Plaintiff was not employed by HPEC, DXC, among others. ECF 20. On March 6, 2018, the parties stipulated to (1) participating in private mediation, (2) terminating the pending motion to dismiss, and (3) staying the litigation pending mediation. ECF 25. By February 12, 2019, mediation efforts fell apart, yet the parties stipulated to a continued stay to continue their settlement discussions. ECF 32. The most recent stay expired on April 30, 2019 without a settlement. *See* ECF 37.

On December 10, 2019, Plaintiff filed a second amended complaint asserting nine causes of action on behalf of herself, six putative classes and four putative sub-classes. *See generally*, Second Amended Complaint ("SAC"), ECF 48. On December 18, 2019, Defendants again filed a motion to dismiss reasserting that Plaintiff never worked for HPEC or DXC. ECF 49. On March 31, 2020, the Court granted Defendants motion with leave to amend. Order Granting Motion to Dismiss SAC ("Prior Order"), ECF 63. Furthermore, the Court ordered that any amended complaint be filed by May 15, 2020 and that it will be Plaintiff's final opportunity to cure defects in the complaint. *Id.* at

8.

On May 18, 2020, Plaintiff filed her Third Amended Complaint alleging the same nine causes of action. *See generally* TAC. In the TAC, Plaintiff includes allegations that HPEC's logo was on her paystubs and that she was subject to the policies and practice of HPEC. *Id*. ¶¶ 22-25. Plaintiff also alleges that when HPEC merged with Computer Sciences Corporation to become DXC, she became subject to the policies and practices of DXC as well. *Id*. ¶ 26. On May 29, 2020, Defendants filed the present Motion.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pleaded factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations which contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether the alleged facts are plausible, the Court is "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.   REQUESTS FOR JUDICIAL NOTICE

Ordinarily, a district court's inquiry on a Rule 12(b)(6) motion to dismiss is limited to the pleadings. "A court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice –

3

1  without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*,
2  342 F.3d 903, 908 (9th Cir. 2003). Courts may take judicial notice of facts that are "not subject to
3  reasonable dispute." Fed. R. Evid. 201(b). Indisputable facts are those that are "generally known"
4  or that "can be accurately and readily determined from sources whose accuracy cannot be reasonably
5  questioned." *Id.*

6  Defendants request that this Court take judicial notice of the contents of Plaintiff's amended
7  letter to the California Labor and Workforce Development Agency ("LWDA") regarding Plaintiff's
8  intent to pursue PAGA claims, dated January 10, 2020. ECF 66, ECF 66-1 (the "Amended PAGA
9  Notice"). Plaintiff does not oppose the request. The Court finds that the Amended PAGA Notice
10 is properly subject to judicial notice. The Amended PAGA Notice is incorporated by reference into
11 the TAC. *See TAC* ¶ 155 ("Plaintiff has complied with the procedures for bringing suit specified in
12 the Labor Code section 2699.3."). The "incorporated by reference" doctrine permits the Court to
13 take into account documents "whose contents are alleged in a complaint and whose authenticity no
14 party questions, but which are not physically attached to the [plaintiff's] pleading." *Knieval v.*
15 *ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal citations omitted). Courts routinely take
16 judicial notice of PAGA notices at the motion to dismiss stage. *See, e.g., Gunn v. Family Dollar*
17 *Stores, Inc.*, NO. 3:14-CV-1916-GPC-BGS, 2016 WL 7030363, at *2 (S.D. Cal. Dec. 2, 2016)
18 (granting defendant's request for judicial notice "[b]ecause Plaintiff's PAGA claim depends upon
19 the sufficiency of the letter's content and because Plaintiff does not dispute the authenticity of the
20 document."). Defendants' request for judicial notice is GRANTED.

21 **IV.   DISCUSSION**

22 Defendants seek to dismiss all claims asserted against Defendants HPEC and DXC for
23 failure to state a claim against them under either California law or the FLSA because Plaintiff was
24 never employed by them. Motion at 2. Defendants also move to dismiss Plaintiff's PAGA claim
25 against all Defendants for failure to exhaust administrative remedies under PAGA. *Id.* at 6.

26      **A.   Claims against HPEC and DXC**

27 It is undisputed that two Defendants, HPES and ES employed Plaintiff. Defendants seek
28 dismissal of the other two Defendants, HPEC and DXC, arguing that the TAC remains deficient in

4

alleging facts that would establish a plausible claim that these two entities employed Plaintiff. Motion at 2. Under California law, "an employment relationship must exist in order for the California wage orders or the provisions of the Labor Code governing wages … to be applicable." *Post v. Palo/Haklar Associates*, 23 Cal. 4th 942, 947 (2000) (citing 1 Wilcox, Cal. Employment Law § 1.04[1][a], p. 1-9 (2000)). "Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result." *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737, 80 Cal. Rptr. 2d 454 (1998) (citation omitted). Thus, in order to make a claim against HPEC or DXC, Plaintiff must allege sufficient facts to support a plausible inference that those entities employed her.

Although this is Plaintiff's fourth attempt at curing the deficiencies in her complaint, and despite the Court's clear guidance in the Prior Order, the TAC remains devoid of facts supporting a plausible claim that either HPEC or DXC employed Plaintiff under any theory of liability. In fact, the TAC, like the prior complaints, does not even attempt to establish the relationship amongst Defendants. Plaintiff points to the following five paragraphs in the TAC as the factual support for her claims against DXC and HPEC:

> 22. Plaintiff was hired by Defendants' predecessors sometime on or about June 23, 2003 as an hourly, non-exempt employee who worked in California.
>
> 23. During the relevant time period of Plaintiff's employment with Defendants, Plaintiff has worked for, and received paystubs from, HP and ES.
>
> 24. During the relevant time period of Plaintiff's employment with Defendants, she has received numerous documents identifying HPEC as her employer. Until as late as July 2017, Plaintiff's paystubs included HPEC's logo.
>
> 25. During the relevant period of Plaintiff's employment with Defendants, she was subject to the policies and practice of HPEC, as is evidenced in written policies provided to her and which she was required to follow, such as the "Manager Guidelines for Non-Exempt Employees Federal versus California," which contain HP's name as well as HPEC's.
>
> 26. When HPEC merged with Computer Sciences Corporation and became DXC Technology Services, LLC, Plaintiff became subject to the policies and practices of DXC, including being subject to DXC's vacation policy.

5

Plaintiff's Opposition to Defendants' Motion ("Opp'n") at 3 (citing TAC ¶¶ 22-26), ECF 67.

The TAC is silent as to the theory or theories of liability Plaintiff asserts in bringing wage and hour claims against two entities that did not employ her. In her Opposition brief and at the Hearing, Plaintiff alluded to three theories: (1) joint employer liability, (2) integrated enterprises liability, and (3) successor liability. The TAC fails to state a plausible claim under any of those theories, as discussed below.

### 1. Joint Employer Liability

The joint employer doctrine recognizes that "even where business entities are separate, if they share control of the terms [or] conditions of an individual's employment, both companies can qualify as employers." *Johnson v. Serenity Transportation, Inc.*, No. 15-CV-02004-JSC, 2016 WL 270952, at *10 (N.D. Cal. Jan. 22, 2016) (quoting *Guitierrez v. Carter Bros. Sec. Servs., LLC*, No. 2:14-cv-00351-MCE-CKD, 2014 WL 5487793, at *3 (E.D. Cal. Oct. 29, 2014)).

For claims under the FLSA, the Ninth Circuit has adopted a four-part "economic reality" test to determine whether the employer-employee relationship exists. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), *disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985). These factors include whether the employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.*

California has adopted the California Industrial Welfare Commission's ("IWC") definition of employer, which applies to California Labor Code violations. *Martinez v. Combs*, 49 Cal. 4th 35, 64, 231 P.3d 259, 278 (2010), *as modified* (June 9, 2010). To employ, under the IWC's definition, "has three alternative definitions." *Id.* It means: (a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship. *Id.* "[C]ontrol over any one of the three aspects—wages, hours, or working conditions—is sufficient to impute employer liability under California wage and hour law." *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 939 (N.D. Cal. 2016) (citation omitted).

1    Plaintiff's allegations in the TAC fail under both tests. ***First***, Plaintiff alleges that "[u]ntil
2    as late as July 2017, Plaintiff's paystubs included HPEC's logo." TAC ¶ 24. But the inclusion of
3    HPEC's logo on Plaintiff's paystub – which clearly identifies HPES as her employer (ECF 56-3) –
4    does not lead to a plausible inference that HPEC (let alone, DXC) exercised any power or control
5    over Plaintiff's hiring or firing, work schedule, employee records, or even her wages. The
6    appearance of a company's logo on a paystub "fails to show that a company financed the paycheck."
7    *Luna v. Universal Studio City Prods. LLLP*, No. CV 12-9286 PSG (SSX), 2013 WL 12308198, at
8    *4 (C.D. Cal. Aug. 27, 2013); *see also Ogogo v. JayKay, Inc.*, No. 2:18-CV-03203-JAM-DB, 2019
9    WL 2267193, at *5 (E.D. Cal. May 28, 2019) ("[A payroll processing company] does not transform
10   into an employer simply because it processes payroll, issues and prints the wage statements, or
11   because the company logo appears on the paystub). Thus, the mere appearance of HPEC's logo on
12   Plaintiff's paystub is not sufficient to state a plausible claim that HPEC or DXC employed her.

13   ***Second,*** Plaintiff alleges that she was subject to HPEC's "Manager Guidelines for Non-
14   Exempt Employees Federal versus California." TAC ¶ 25. In addition, Plaintiff alleges that after
15   HPEC merged with Computer Sciences Corporation and became DXC, Plaintiff became subject to
16   DXC's vacation policy. TAC ¶ 26. As a threshold matter, Plaintiff was not even classified as an
17   exempt employee, and thus the Manager Guidelines did not apply to her. TAC ¶¶ 27-30.

18   That aside, written policies do not establish control over day-to-day management decisions.
19   *See Santos v. TWC Admin. LLC*, No. CV1304799MMMCWX, 2014 WL 12558274 (C.D. Cal. Nov.
20   3, 2015) (holding that an employee handbook distributed to a company's subsidiaries does not
21   demonstrate that the company was an employer); *Cellini v. Harcourt Brace & Co.*, 51 F. Supp. 2d
22   1028, 1034 (S.D. Cal. 1999) (holding that the application of a parent company's general policies do
23   not demonstrate it exercised any control over the subsidiary's day-to-day employment decisions);
24   *see also Djukich v. AutoNation, Inc.*, No. CV1304455BROAGRX, 2014 WL 12845831, at *6-7
25   (C.D. Cal. May 27, 2014) (finding that the promulgation of general policies and procedures by a
26   parent company does not that show exercise of control or establish an employment relationship).
27   Thus, the allegations of HPEC's Manager Guidelines and DXC's vacation policy – even if
28   applicable to Plaintiff – do not establish a plausible claim that either company employed Plaintiff.

United States District Court
Northern District of California

7

\*\*\*

In sum, Plaintiff's theory of joint employment as to HPEC and DXC is implausible on the facts alleged in the TAC.

### 2. Integrated Enterprises Liability

Under the "integrated enterprise" test, two corporations, usually a parent and a subsidiary company, may be treated as a single employer for purposes of liability. *Laird*, 68 Cal.App. 4th at 737. Under this theory, in determining whether two entities are liable as a single employer or an "integrated enterprise," courts consider four factors: (1) centralized control of labor relations; (2) interrelation of operations; (3) common management; and (4) common ownership or financial control. *Id.* "[C]ommon ownership or control alone is never enough to establish parent liability." *Id.* at 738. "An employee who seeks to hold a parent corporation liable for the acts or omissions of its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy burden to meet under both California and federal law." *Id.* at 737.

Here, the analysis is straightforward. The TAC simply lacks any facts establishing who the parent company of Plaintiff's employers (ES and HPES) was – let alone any facts supporting centralized control of labor relations; interrelation of operations; common management; or common ownership or financial control.

\*\*\*

In sum, Plaintiff's theory of liability under the "integrated enterprises" test fails as to HPEC and DXC.

### 3. Successor Liability

A successor entity may be held liable for its predecessor's actions in limited situations, including if "(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (1977).

*First*, Plaintiff's allegation that she was hired by "Defendants' predecessors" is not only conclusory, but also meaningless. *See* TAC ¶ 22. She fails to identify the "predecessors" who

allegedly hired her or explain how those unidentified "predecessors" are related to HPEC and DXC. ***Second***, Plaintiff's allegation that "when HPEC merged with Computer Sciences Corporation and became DXC Technology Services, LLC, Plaintiff became subject to the policies and practices of DXC" is also conclusory. *See* TAC ¶ 23. In addition, Plaintiff cannot impose liability on DXC as a successor to HPEC because she has failed to establish that HPEC (the alleged predecessor) ever employed her.

\*\*\*

In sum, Plaintiff fails to state a claim that HPEC or DXC employed her under the successor liability theory.

### 4. Leave to amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

This case was filed nearly three years ago on October 10, 2017, and the TAC is Plaintiff's fourth attempt at bringing a plausible claim. ECF 1. On December 15, 2017, Plaintiff filed a first amended complaint, adding a cause of action for civil penalties pursuant to the PAGA (Cal. Lab. Code §§ 2698, et seq.). ECF 18. On January 16, 2018, Defendants filed a motion to dismiss on the ground that Plaintiff was not employed by several of the named defendants. On December 10, 2019, Plaintiff filed a second amended complaint. ECF 48. On December 18, 2019, Defendants again filed a motion to dismiss arguing that Plaintiff was not employed by DXC or HPEC. ECF 49. The Court granted that motion on March 31, 2020 with leave to amend but warned that "the third amended complaint will be Plaintiff's final opportunity to cure the defects in her complaint." Prior

Order at 8.

The TAC remains woefully deficient as to the allegations against HPEC and DXC. Thus, Plaintiff has repeatedly failed to cure the deficiencies in her complaint against these Defendants and any further amendment would be futile and prejudicial to HPEC and DXC. The Court, therefore, GRANTS Defendants' Motion to dismiss all claims against HPEC and DXC WITHOUT LEAVE TO AMEND.

### B. The PAGA Claim

Defendants seek to dismiss Plaintiff's PAGA claim against all Defendants.

#### 1. PAGA Claim against HPEC and DXC

Plaintiff's PAGA claim against HPEC and DXC rises and falls with her wage and hour claims against those Defendants. Having ruled that the TAC fails to state a claim against HPEC or DXC as Plaintiff's employers, the Court also GRANTS Defendants' Motion to dismiss the PAGA claim against HPEC and DXC WITHOUT LEAVE TO AMEND.

#### 2. PAGA Claim against HPES and ES

Defendants also seek dismissal of Plaintiff's PAGA claim against HPES and ES (her undisputed employers) and argue that she failed to exhaust her administrative remedies under PAGA. Motion at 6-7. A claim for civil penalties under PAGA is governed by a one-year statute of limitations. *See* Cal. Code Civ. P. § 340(a); *see also Thomas v. Home Depot USA Inc*., 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007). However, to pursue a PAGA claim, a plaintiff first must exhaust his or her administrative remedies by providing notice of the PAGA claim to the California LWDA. *See* Cal. Lab. Code § 2699.3(a)(1). If the LWDA declines to investigate, or does not respond within 65 days, the plaintiff may sue under PAGA. § 2699.3(a)(2).

Plaintiff's October 6, 2017 pre-trial suit letter to the LWDA did not name her employers HPES or ES. *See* ECF 63. Thus, Plaintiff's pre-suit PAGA notice did not satisfy the statute's exhaustion requirements as to HPES and ES.

But on January 10, 2020, Plaintiff amended her PAGA notice, now adding HPES and ES to her letter to the LWDA. ECF 66-1. By the time Plaintiff filed the TAC, 65 days had passed without any indication from the LWDA. TAC ¶ 155. Defendants argue that Plaintiff's Amended PAGA

Notice does not save her PAGA claim because she has been employed by Perspecta Enterprise Solutions LLC ("Perspecta") – not HPES or ES – since March 2018, more than one year before she submitted her amended notice to the LWDA on January 10, 2020. *See* Motion at 7 (citing ECF 56-6 (Plaintiff's December 13, 2019 paystub identifying Perspecta as Plaintiff's employer); ECF 55 at 3).

Plaintiff does not dispute that she currently works for Perspecta or that Perspecta was her employer for more than a year before her Amended PAGA Notice was submitted. Instead, Plaintiff responds that Perspecta is "simply the newest name of that entity, which was formerly ES, and before that, HP[ES]." Opp'n at 7; *see also* Exhs. 1-2 to ECF 57 (HPES's AND ES's name change forms filed with the California Secretary of State). Accordingly, Plaintiff argues that she has been continually employed by the same entity – just under different names – making her PAGA notice compliant as to HPES and ES. *Id.*

At the Hearing, Defendants' counsel represented that Prespecta is not the same entity as HPES and ES, but a "spin off." Defendants might be correct – but the Court is not inclined to rule on the relationship between Perspecta and HPES and ES on this record and at the motion to dismiss stage. Accordingly, Defendants' Motion to Dismiss Plaintiff's PAGA claim as to HPES and ES is DENIED.

### 3. PAGA Claim for Violation of Labor Code Section 212

Defendants also seek to dismiss Plaintiff's PAGA claim for violation of Labor Code section 212, arguing that Plaintiff's LWDA notices fail to mention this labor code provision. Motion at 8. Under the Labor Code section 2699.3(a)(1)(A), a plaintiff must give written notice of "the specific provisions of this code alleged to have been violated." Plaintiff does not respond to this argument. *See generally*, Opp'n. The Court has taken judicial notice of Plaintiff's Amended PAGA Notice, dated January 10, 2020, and finds that the notice does not mention or refer to Labor Code section 212.

Because any amendment would be futile, Plaintiff's PAGA claim for violation of Labor Code section 212 is DISMISSED WITHOUT LEAVE TO AMEND.

## V. PLAINTIFF'S LATE SUBMISSIONS

The Court notes the tardiness of Plaintiff's recent filings. Plaintiff's TAC was due on May 15, 2020 (Prior Order at 8) – but was not filed until May 18, 2020. Plaintiff's Opposition brief was due on June 12, 2020 (ECF 65) – but was not filed until June 16, 2020. No explanation or excuse was provided. While the Court has accepted these submissions for the purpose of deciding this Motion on its merits, Plaintiff is now on notice that any further late submissions for the duration of this case, absent showing of good cause, will be stricken without leave to refile.

## VI. ORDER

For the foregoing reasons, the Court orders as follows:

- Defendants' Motion to Dismiss all claims against HPEC and DXC is GRANTED WITHOUT LEAVE TO AMEND.
- Defendants' Motion to Dismiss Plaintiff's PAGA claim against HPES and ES is DENIED.
- Defendants' Motion to Dismiss Plaintiff's PAGA claim as to Labor Code section 212 is GRANTED WITHOUT LEAVE TO AMEND.

This Order terminates ECF 65.

**IT IS SO ORDERED.**

Dated: September 14, 2020

_____
BETH LABSON FREEMAN
United States District Judge